## IRA BARROWS *vs.* THE MASSACHUSETTS MEDICAL SOCIETY.

The Massachusetts Medical Society having expelled a member for alleged gross immorality, this court declined to issue a *mandamus* to compel his restoration, there being no sufficient proof of haste, or prejudice against such member, or that the society came to a wrong decision, or acted in violation of his rights.

THIS was a petition for a writ of *mandamus*, to order the Massachusetts Medical Society to restore to membership the petitioner, who had been expelled by that association.

The petition alleged the incorporation of the society, (*St.* 1781, *c.* 15,) its organization, &c., and then proceeded as fol lows: "Your petitioner further shows that in the year eighteen hundred and thirty-five, he then being a resident of said Massachusetts, and a practitioner of medicine therein, was duly elected and admitted a fellow of said society, according to said act of incorporation and the by-laws passed in pursuance thereof, and thereby became entitled to all the rights and privileges of such fellow; that he did exercise and enjoy the same equally with other fellows, and that he was and continued to be such fellow, and exercised and enjoyed such rights and privileges until the commission of the acts hereinafter mentioned. He further shows that in February, in the year eighteen hundred and fifty, at a meeting of the counsellors of said society, in said Boston, certain proceedings were had in regard to him, a copy of which follows: ' Dr. Carpenter moved the following votes:

"' *Resolved*, That all homœpathic practitioners are, or should be denominated irregular practitioners, and according to the by-laws of this society made and provided, ought to be expelled from membership.

"' *Resolved*, That Ira Barrows, of Norton, now a member of this society, ought to be, and by a vote of this society is, expelled from membership, for the following reasons: 1. For being guilty of dishonorable conduct: 2. For being the maker and vendor, at sundry different times, of certain and several quack medicines: 3. For being an irregular practitioner, hav·

ing adopted the homœpathic or infinitesimal or loaf-sugar system.'

" On motion of Dr. Bigelow, the first resolve was laid on the table; and, on motion of Dr. J. B. S. Jackson, the resolves relative to Dr. Ira Barrows were referred to a committee of three.   The committee consisted of Drs. Caleb Swan, of Easton, Randall, of Rehoboth, and Phelps, of Attleborough."

" He further shows, that a meeting of said committee was held at Attleborough, an examination of said charges made, and a report drawn up, a copy of which is hereto annexed;[1] that the said report was presented by said committee at a

---

[1] The committee, chosen at a meeting of the counsellors held February 6, 1850, to consider certain resolves presented by Dr. Benoni Carpenter, of Pawtucket, beg leave to report, that after notifying the parties concerned, they met at Dean's Hotel, in Attleboro', on the 1st instant, both the complainant and respondent being present, and fully heard the accusation and defence in the case : First, for being guilty of dishonorable conduct.  The ground of this accusation grew out of a certain bargain between the medical gentlemen, wherein Dr. Barrows, for a large sum of money, relinquished his practice to Dr. Carpenter, went out of the state for a year or more, then returned and broke his contract by practising in Pawtucket.  This was set forth in an article published by Dr. Carpenter, in the "Pawtucket Gazette and Chronicle," and admitted by Dr. Barrows to be essentially correct.  Your committee consider that, had there been any consideration mentioned in the relinquishment, this would more properly be a subject for legal investigation than one of this kind; but, as it is, they are of opinion that, in a moral point of view, the respondent is guilty of the charge.  The second charge was that of manufacturing, recommending, and vending a certain nostrum called "Watona."  This the respondent acknowledged to be true, though not amenable to the society, because he was at that time a druggist, and not a practitioner of medicine.  This plea was met by Dr. Carpenter, that he did recommend this same nostrum as a physician, and, at any rate, he was still a member of the society, and therefore amenable to its rules and regulations.  The third charge, for being an irregular practitioner, in having adopted the homœopathic, or infinitesimal or loaf-sugar system : Dr. Barrows freely admitted that he practised upon that system wholly, and maintained it to be the correct system; but denied the charge of being an irregular practitioner because of thus practising, and was strong in his desire to have this charge laid before the counsellors, and through them before the society, and there discussed.  Your committee are of the opinion that this is the best course to be pursued, as the question must be met and decided by the society sooner or later.  Respectfully submitted by Caleb Swan, of Easton, M. R. Randall, of Rehoboth, Thaddeus Phelps, of Attleboro'.

meeting of the said counsellors held in said Boston, on the 30th of May, in the year 1850, when the following proceedings were had, a copy of which, from the records, is as follows : ' The report of the committee on the subject of complaints made against Dr. Barrows was read. Dr. Gordon moved that the various charges be taken up and voted upon *seriatim* Voted. Dr. Storer moved that the counsellors propose to the society the expulsion of Dr. Barrows, on the ground of " gross immorality," in having broken his solemn pledge given to Dr. Carpenter. Dr. Carpenter acted as accuser, and Dr. Barrows (present by invitation of the committee) defended himself. Dr. Storer's motion was then passed *nem. con.*' He further shows, that at the annual meeting of said society, held at Worcester, May 28, 1851, he believes that such recommendation was made by the counsellors aforesaid to the said society, but that no action was taken or had in relation to it, except that the subject was postponed to an adjournment of said annual meeting, which was held in said Boston on the 2d day of October last past, when and where a vote was passed to expel your petitioner from said society, for the alleged offence ' of gross immorality in having broken his solemn pledge given to Dr. Carpenter,' and he was accordingly expelled, and thus deprived of all his rights and privileges as a fellow of said society, and hath been, and is still deprived of the same unjustly, irregularly, without any lawful authority, justification, or excuse, and contrary to law and justice. He further avers, that no such power or authority is given by said act of incorporation to expel any fellow for such an offence as was set forth in said recommendation, and the vote of said society thereon; and that no such power or authority is given or assumed in or by any of the by-laws of said society, and he hereto annexes a copy of the eleventh section of said by-laws, the same being the only one, to his knowledge, relating to said subject ' Any fellow may be expelled from the society, or, having resigned his fellowship, may be deprived of his privileges, by a vote of two thirds of the fellows present at any annual meeting, upon charges of the following description, provided the charge or charges against him have first been considered

by the counsellors, and are brought forward by them, or
have been made before the society at a preceding annual
meeting, and provided an opportunity has been given to lay
before the society a refutation of the charge or charges so
made, or a defence of his conduct in the premises, viz : 1.
For any gross and notorious immorality, or infamous crime
under the laws of the land ; 2. For any attempt to overturn
or destroy the society ; 3. For the breach of any of the by-
laws of the society for which expulsion is made the penalty
4. For furnishing to any person, or presenting in his own be-
half, a false certificate of character and studies as a student
of medicine, tending to deceive the public or the censors of
this society.' He further avers that he knows of no other
charges that have ever been made against him to said society
or counsellors, except as is hereinbefore set forth, or of any
specification under said charges, and that he never received
any formal or official notice of the same, or any other charges ;
that the counsel he had employed, for the purpose of defend-
ing himself against them, was forbidden by said society to
appear, and notified in writing that he could not be heard.
He also avers that he is not, was not, and never was guilty
of gross immorality, nor of violating his solemn pledge to
Dr. Carpenter as is falsely alleged in said proceedings, and is
desirous of being heard or tried thereon by any competent
tribunal when and where this court shall order. Wherefore,
inasmuch as your petitioner has been unlawfully, unjustly,
and irregularly disfranchised, and deprived of his legal rights
and franchises as a member of said corporation, by the said
corporation, he respectfully prays that a writ of *mandamus* in
due form may be issued by this honorable court to the said
corporation, commanding them to admit and restore your pe-
titioner to fellowship, and all the rights of fellowship in said
society, as fully and effectually as if the said vote of expul-
sion had not been passed ; that such damages and costs may
be awarded him as shall seem just and proper, and that such
orders and decrees may be passed in the premises as shall be
deemed lawful and just." The petition was sworn to by the
petitioner.

*H. G. O. Colby*, for the petitioner. This court has jurisdiction and power to issue the *mandamus*. Rev. Sts. *c.* 81, § 5. It is uniformly granted to restore officers of corporations unlawfully amoved, or members unlawfully disfranchised. See the cases cited in Ang. & Am. on Corp. *c.* 20. The general rule, as stated in section 704, is, " If a corporator has been unjustly or irregularly amoved, or suspended from his office, or disfranchised, the court will grant a *mandamus* to restore him." See *Strong's case*, 20 Pick. 484.

1. The defendants are a corporation having franchises, &c.
2. The petitioner was a member for fifteen years, and expelled.
3. There was no legal cause for his expulsion.

The by-laws define the causes, and the petitioner is not brought within the words of the by-laws : 1st. It is not alleged to be " gross and notorious immorality," but simply " gross." 2d. The conduct charged as the cause of expulsion is neither open nor gross immorality, nor any offence of which the defendants had jurisdiction. It is a mere violation of a pledge. *Commonwealth* v. *St. Patrick Benevolent Society*, 2 Binn. 441 ; *Commonwealth* v. *Philanthropic Society*, 5 Binn. 486 ; *Fawcett* v. *Charles*, 13 Wend. 473 ; *Green* v. *African Meth. Epis. Society*, 1 Serg. & Rawle, 254 ; *Delacy* v. *Neuse River Navigation Co.* 1 Hawks, 274 ; Ang. & Am. on Corp. §§ 702, 704.

*T. D. Eliot*, for the respondents. 1. This application rests upon the provisions in Rev. Sts. *c.* 81, § 5. But no such application has ever been made to this court. It is entirely novel in Massachusetts. It is not necessary to contend that there can be no case where it would be entertained ; but whether, upon the facts stated and the legitimate inferences from them, apparent in the petition and the documents annexed, it would be " necessary to the furtherance of justice," that this court should require the respondents to answer further, is the question now raised.

2. The application is to the discretion of the court. It must rest upon affidavits carefully and formally drawn up. And it must appear that some just and useful purpose is to be attained. Ang. & Am. on Corp. *c.* 20, § 698. In that chap-

ter, many cases are cited where this application has been entertained, but no case in England or in this country, there cited, goes so far as this. Where, in a public corporation, an office has been wrongfully withheld, or in private corporations, where removal has affected some pecuniary or some valuable right, such petition has been heard ; but in no case where, in a private corporation, it did not appear that membership conferred some valuable right, and where, for proper cause and after deliberate hearing, removal was made, and especially where, as here, so full and explicit power is contained in the charter itself, has the court exercised this high supervisory power. A leading case in the earlier books is that of *Rex* v. *Barker*, 3 Burr. 1265.

3. The affidavits should show the nature of the office, so that the court can see if it be one that *mandamus* will lie to compel admission to it. In this case, there is no affidavit or proofs other than the affidavit of the party. The documents annexed and made part of the petition show that some of the statements in the petition are inaccurate. 1st. As to formal and official notice ; because it was shown that actual and substantial notice was had, by the proceedings themselves. 2d. As to counsel not being permitted to be present; which, in fact, negatives the first statement, and is inaccurate and indefinite. The petition does not state that there was no defence or hearing, nor is the writing exhibited so that the court can judge whether the averment is at all material. It does not state that the petitioner had no counsel, but only that " the counsel " employed were forbidden to appear; but why forbidden, or whether any injury to the petitioner resulted, is not stated.

4. The right of expulsion depends on the character of the corporation, and on the charter and by-laws passed under it, and upon the kind of rights which membership confers. No member could be deprived of an interest in property by expulsion, unless power to expel be conferred by the charter. Ang. & Am. on Corp. § 410.

5. But even where the charter does not contain express power to remove, and *à fortiori* where it does contain a full

and explicit power, as in this case, no *mandamus* will be granted where the removal appears to have been made for a fair and proper cause. *Commonwealth* v. *Philanthropic Society*, 5 Binn. 486.

6. This remedy has been, in some of the states of the Union, much extended, and has been applied much more freely than it would, as we believe, be applied in this commonwealth, and the books of reports make quite apparent the great inconvenience of the application of the remedy sanctioned in those states. It has been applied to restore a trustee of a religious corporation ; 1 Serg. & Rawle, 254. But that case was decided wholly upon the insufficiency of the return. The question as now presented was not raised. Also, to restore a trustee of a private academical corporation ; 6 Conn. 533. But this case was decided upon the ground that the trustees had no power, for any cause, to remove one of their own members. Also, to restore a member of the St. Patrick Benevolent Society ; 2 Binn. 448. But the question here turned entirely upon the validity of a by-law. Also, in 2 Serg. & Rawle, 141, where no vote or act of expulsion was passed or done ; and upon that the case turned.

7. The charter gives full power to expel. A majority of the fellows would be sufficient for the purpose. But the by-laws in certain cases give the right, and then, after formal proceedings, a vote of two thirds is required. Here the proceedings were pursuant to the by-laws. The phrase of the by-law was used. The petitioner had the protection which those proceedings afforded. See 11th by-law. The charges appear in the resolutions of the counsellors, and the proceedings upon them, viz : the committee, the hearings, the report, the votes, the recommendation to the fellows, and their final action. A verbal criticism is made upon the words " gross immorality." The society certainly had the right to determine upon the meaning of those words. But it was for the benefit of the petitioner that the formal proceedings under the by-laws should be had. The charge was for a professional fraud, for a wrong done as a practitioner of medicine, and was good cause for removal, entirely independent of the by-laws. The

offence was one solely cognizable by the society; and, being proved, as is shown by the fact that the body of counsellors, with one voice, called for a dismissal, the further connection of the petitioner with the society could not be continued without loss and dishonor to them.

8. The case is *res judicata*, and while the court here might perhaps interfere to keep a corporation " in the line of order," as it is said, they will not inquire into the merits of what has passed *in rem judicatam* in a regular course of proceedings. *Commonwealth* v. *The Pike Beneficial Society*, 8 Watts & Serg. 147, is a strong case to this point.

9. But the offence proved was " gross immorality," within the fair meaning of the by-law. Admitting it to be proved as charged, it certainly cannot be otherwise defined. The petitioner denies that he was guilty of the charge; but that question has been tried by his peers. The court are not called upon to pass upon it here.

10. The petition does not aver, nor is it shown to the court, what the rights are, if any, of a member of this society. It does not appear that they are not purely honorary. If that be so, and the petitioner has been wrongfully expelled in fact, though rightfully in form, it does not appear but that he has a full remedy at law for any injury sustained. It has not been made to appear that it is " necessary for the furtherance of justice " to compel these respondents to answer further before the court.

SHAW, C. J. The court are of opinion that, under all the circumstances disclosed in the petition, and the votes and proceedings annexed and referred to therein, such a case is not shown as to warrant and require the extraordinary power of the court by *mandamus*. The Medical Society, both by its charter and by-laws, had jurisdiction to inquire into and pass judgment upon the conduct of its members, and, in a proper case, to expel a member; and " gross immorality " in a professional transaction, having a tendency to bring the profession into dishonor before the community, if distinctly charged and proved, may be of such a character as to justify the exercise of their power. The proceedings appear to have been

conducted with deliberation, and several opportunities were given to the petitioner to be heard before the committee and the counsellors, and the vote of expulsion was unanimous. Without saying that the court would in no case afford its authority by writ of *mandamus* to restore a member wrongfully expelled from such a society, we cannot perceive, upon examination of the proceedings, any evidence of haste or prejudice against the petitioner, or that the society came to a wrong decision, or acted in violation of the petitioner's rights.

*Petition dismissed.*